**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON**

**STATE OF WEST VIRGINIA,** *ex rel.***,
PATRICK MORRISEY, Attorney General,** *et al.***,**

     **Plaintiffs,**

**v.**           **Civil Action No. 2:16-cv-01772**
             **Judge John T. Copenhaver, Jr.**

**McKESSON CORPORATION,**

     **Defendant.**

**DEFENDANT'S RESPONSE IN OPPOSITION TO
"PLAINTIFFS' MOTION TO REMAND AND FOR COSTS AND FEES"**

## I. INTRODUCTION

Plaintiffs, the State of West Virginia and two of its agencies,[1] facially plead in three counts against McKesson Corporation ("McKesson") that they are entitled to money damages for alleged violations of federal law and that they are entitled to an injunction enforcing federal law. Plaintiffs, however, omitted any reference to federal law in earlier complaints against other pharmaceutical distributors. Thus, by now adding allegations of federal law violations and seeking to enforce federal law, Plaintiffs clearly intend to plead federal claims in this case. Those facial federal claims give this Court federal question jurisdiction. Additionally, Plaintiffs plead in their 446-paragraph Amended Complaint that the basis for McKesson's liability in all eight counts is that McKesson shipped controlled substances allegedly in violation of a legal duty to refuse to ship suspicious orders. This asserted legal duty is found, if at all, in the U.S. Drug Enforcement Administration's interpretation of the federal Controlled Substances Act. No such

---

[1] Plaintiffs are the State of West Virginia through its Attorney General (the "WVAG"), and the West Virginia Department of Military Affairs and Public Safety ("WVDMAPS") and the West Virginia Department of Health and Human Resources ("WVDHHR") through their respective Secretaries.

duty may be found in the West Virginia Uniform Controlled Substances Act, its Legislative Rules promulgated by the West Virginia Board of Pharmacy, or in any Board pronouncement. Thus, all Plaintiffs' claims necessarily depend on a substantial question of federal law, which is an additional, independent basis for federal jurisdiction.

## II. BACKGROUND

### A. Plaintiffs' claims depend on allegations that McKesson shipped controlled substances that it unilaterally should have refused.

All Plaintiffs' claims against McKesson are founded on allegations that McKesson should have "refused," "suspend[ed]," and "not fill[ed]" purportedly suspicious orders for controlled substances from West Virginia pharmacies. Plaintiffs plead that McKesson "shipped millions of doses of highly addictive controlled pain killers into the state," when McKesson allegedly was aware that the "controlled substances it distributed were the kinds that were susceptible to being diverted for illegal purposes." (Am. Compl. ¶¶ 41, 47.) Plaintiffs plead that McKesson should not have shipped pharmacies' orders because of an alleged duty to "prevent diversion of its medicines to illegal purposes."[2] (*Id.* ¶¶ 47-48.)

Plaintiffs plead that McKesson's unilateral action resulted in the allegedly wrongful shipments when, for example, Plaintiffs allege that

> the State's "epidemic of prescription drug addiction" "was substantially fueled by [McKesson]'s illegal, reckless, and malicious action in flooding the state with highly addictive prescription medications" (*id.* ¶ 26);

---

[2] McKesson is registered with the Drug Enforcement Administration ("DEA") and the West Virginia Board of Pharmacy ("WVBOP") to distribute controlled substances in West Virginia. (Am. Compl. ¶ 6; Ans. ¶ 6.) All McKesson's shipments of controlled substances to West Virginia were (and are) to pharmacies that also are registered with the DEA and WVBOP to receive controlled substances. (Ans. ¶ 11.) Plaintiffs do not allege that McKesson unlawfully shipped controlled substances to unregistered pharmacies. (*See* Am. Compl. ¶ 294 (alleging that McKesson supplied "12.75% of all Oxycodone and Hydrocodone that was *legally* distributed to West Virginia") (emphasis added).)

McKesson failed to identify "suspicious orders, which should have been refused" (*id.* ¶ 68);

McKesson knew or should have known that controlled substances "were being diverted to illegal use" in Boone County and that McKesson "had a legal duty to ensure it was not filling suspicious orders" (*id.* ¶¶ 71-72), which Plaintiffs repeat for other counties;

McKesson negligently and intentionally "filled suspicious orders in Boone County" (*id.* ¶¶ 79-82), which Plaintiffs repeat for other counties; and

McKesson damaged West Virginia as a whole by failing to "identify and suspend shipments that were suspicious orders" (*id.* ¶¶ 279-331).[3]

Plaintiffs incorporate these allegations by reference into each of their eight legal counts.

**B.    Plaintiffs' claims are <u>not</u> based on McKesson's alleged failure to notify the WVBOP of suspicious orders.**

Plaintiffs now wish to disavow their extensive allegations that McKesson unilaterally shipped too many controlled substances into West Virginia. Plaintiffs now re-characterize their Amended Complaint by asserting that McKesson's only failing was failing to report suspicious orders to the WVBOP. (*See* Plfs.' Mem. at 4, 10.) The "duty to 'cease' or 'stop' sales" actually "lies with the State Board of Pharmacy once [McKesson] notifies them of suspicious orders," according to Plaintiffs. (*Id.* at 10) Plaintiffs now assert that the WVBOP is the sole gatekeeper for McKesson's shipments, contrary to their allegations and contrary to the WVBOP's regulation.

---

[3] Plaintiffs identify neither any specific suspicious orders nor any pharmacy that received allegedly improper orders. Plaintiffs instead allege that McKesson's aggregate shipments of controlled substances were too large relative to the number of "expected" patients in West Virginia. (*See, e.g.*, Am. Compl. ¶¶ 279-98 (purporting to provide measure of oxycodone and hydrocodone doses per "expected" West Virginia patient from 2007 to 2012). Plaintiffs also perform their calculations for ten counties. (*Id.* ¶¶ 50-278.) Plaintiffs further allege that McKesson shipped more controlled substances than it should have "expected" to ship when it "knew or should have known it was supplying pill-mill pharmacies" and the like. (*See, e.g., id.* ¶ 319.) Plaintiffs thus clearly allege unilateral action by McKesson.

The Legislative Rule regarding reporting of suspicious orders states in its entirety:

> The registrant shall design and operate a system to disclose to the registrant suspicious orders of controlled substances. The registrant shall inform the Office of the West Virginia Board of Pharmacy of suspicious orders when discovered by the registrant. Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency.

W. Va. C.S.R. § 15-2-4.4.[4]  Nothing in this regulation gives the WVBOP authority to tell McKesson (or other distributors) not to fill an order reported as suspicious.[5]  The WVBOP is not a Plaintiff, and nowhere in the 446-paragraph Amended Complaint is there an allegation that had McKesson reported any suspicious order, the WVBOP could or would have stopped it.  Instead, Plaintiffs plead that McKesson, itself, failed to refuse suspicious orders.  (*See supra* § II.A.)

**C.    Plaintiffs' claims include three counts that facially plead federal law violations.**

After pleading in 331 paragraphs that McKesson allegedly distributed excessive amounts of controlled substances, Plaintiffs assert the following eight claims based on those allegations:

> Count I, Violation of the West Virginia Consumer Credit and Protection Act [the "WVCCPA"] (Am. Compl. ¶¶ 332-47);
>
> Count II, Unfair Methods of Competition and/or Unfair or Deceptive Acts or Practices (*id.* ¶¶ 348-57);
>
> Count III, Injunctive Relief for Violations of the West Virginia Controlled Substances Act (*id.* ¶¶ 358-75);
>
> Count IV, Negligent Violation of Law (*id.* ¶¶ 376-90);
>
> Count V, Intentional Acts and Omissions (*id.* ¶¶ 391-403);
>
> Count VI, Public Nuisance (*id.* ¶¶ 404-418);

---

[4] Federal law contains an identical requirement for distributors to report suspicious orders to the local Field Division Office of the DEA.  21 C.F.R. § 1301.74(b).  The identical federal regulation likewise does not appoint the DEA as a gatekeeper.  (*See infra* § II.D.)

[5] The WVBOP's only command to distributors regarding due diligence before shipping controlled substances is to confirm that a receiving pharmacy is registered to possess controlled substances if the distributor is unsure of the pharmacy's registration.  W. Va. C.S.R. § 15-2-4.3.

Count VII, Negligence (*id.* ¶¶ 419-434); and

Count VIII, Unjust Enrichment (*id.* ¶¶ 435-46).[6]

In Counts III, IV, and V, Plaintiffs specifically plead that McKesson's shipments of controlled substances violated federal law, as follows:

The claims for damages for past losses and future costs sustained by the Plaintiffs are insufficient to prevent future losses that will result from the failure of the Defendant to comply with West Virginia and **United States laws and regulations** as detailed herein (Am. Compl. ¶ 373 (Count III) (emphasis added));

Plaintiffs are entitled to a temporary injunction to prevent Defendant from continuing to violate West Virginia and **United States laws and regulations** (*id.* ¶ 374 (Count III) (emphasis added));

Plaintiffs are entitled to a permanent injunction to prevent Defendant from continuing to violate West Virginia and **United States laws and regulations** (*id.* ¶ 375 (Count III) (emphasis added));

Defendant negligently failed to conform its conduct conformed [*sic*] to **United States law and regulations** (*id.* ¶ 382 (Count IV) (emphasis added));

Upon information and belief, Defendant continues to negligently violate West Virginia laws and regulations, **United States laws and regulations**, and Defendant's industry customs, standards and practices, which continue to proximately cause substantial damages to Plaintiffs (*id.* ¶ 390 (Count IV) (emphasis added));

Defendant intentionally failed to conform its conduct conformed [*sic*] to **United States law and regulations** (*id.* ¶ 395 (Count V)); and

Upon information and belief, Defendant continues to intentionally violate West Virginia laws and regulations, **United States laws**

---

[6] McKesson has moved to dismiss Plaintiffs' claims because they do not state claims on which relief can be granted.  (*See* Docs. 5 & 6.)  Claims that are dismissed for failure to state a legal claim pursuant to Rule 12 still support federal question jurisdiction.  *See, e.g.*, *Burda v. M. Ecker Co.*, 954 F.2d 434, 438-39 (7th Cir. 1992) (claim supporting federal question removal dismissed); *Williams v. Zimmer US, Inc.*, Case No. 5:14-CV-468-F, 2015 WL 4256249, at *3-*7 (E.D.N.C. July 14, 2015) (same).

> **and regulations**, and Defendant's industry customs, standards and practices which continue to proximately cause substantial damages to Plaintiffs (*id.* ¶ 403 (Count V) (emphasis added)).

Furthermore, consistent with Count III, Plaintiffs' Prayer seeks temporary and permanent restraining orders "preventing Defendant from continuing to violate . . . **United States laws and regulations** relating to the distribution of controlled substances in the State . . . ." (*Id.*, Prayer ¶¶ 2-3 (emphasis added).)

## D.     Federal law is the only potential source of a distributor's responsibility to refuse to fill suspicious orders of controlled substances.

In addition to specifically pleading federal law violations in Counts III, IV, and V, all Plaintiffs' claims necessarily depend on McKesson's alleged violation of a duty that may be found, if at all, only in federal law. The Drug Enforcement Administration ("DEA") of the United States Department of Justice has interpreted the public interest factors for registering distributors under the Controlled Substances Act (the "CSA") to impose a statutory responsibility on distributors to exercise due diligence to avoid filling suspicious orders that might be diverted to unlawful uses. While West Virginia's enactment of the Uniform Controlled Substances Act (the "WVCSA"), contains identical public interest factors, the West Virginia Board of Pharmacy (the "WVBOP") has not interpreted those state-law factors to impose a similar responsibility.

Plaintiffs allege that McKesson's duty to refuse to fill suspicious orders is found in W. Va. C.S.R. § 15-2-4.2.1. (*See* Am. Compl. ¶ 42;[7] Plfs.' Mem. at 10.) West Virginia C.S.R.

---

[7] Plaintiffs also purport that the duty is found in "industry guidelines" and "industry customs and standards." (*Id.* ¶ 43 (citing Healthcare Distribution Management Association, *Industry Compliance Guidelines: Reporting Suspicious Orders and Preventing Diversion of Controlled Substances*); *id.* ¶¶ 378-90; *id.* ¶¶ 391-403).) At most, the HDMA Guidelines provide suggestions to distributors for complying with federal law as administered by DEA, not complying with independent industry standards or with West Virginia's or any other state's laws. Thus, the effect of Plaintiffs' pleading that McKesson must abide by industry guidelines is that Plaintiffs again plead claims that depend on proving noncompliance with federal law.

§ 15-2-4.2.1, however, does not require that distributors refuse to fill suspicious orders.  Instead, West Virginia C.S.R. § 15-2-4.2.1 states in full:

> All registrants shall provide effective controls and procedures to guard against theft and diversion of controlled substances. In order to determine whether a registrant has provided effective controls against diversion, the West Virginia Board of Pharmacy shall evaluate the overall security system and needs of the applicant or registrant.

W. Va. C.S.R. § 15-2-4.2.1.[8]  The unambiguous Legislative Rule leaves no room for judicial interpretation.  It gives the West Virginia Board of Pharmacy discretion to determine what are "effective controls against diversion" by considering only the "overall security system" on a registrant-by-registrant basis.  This is the WVBOP's only pronouncement on what constitutes effective controls against diversion.  The WVBOP never has stated in a Legislative Rule or otherwise that it construes a distributor's responsibilities under the WVCSA to include refusing to fill suspicious orders of controlled substances.

The DEA, however, has attempted to impose that requirement under the federal CSA since a September 27, 2006 letter to distributors.  According to DEA,

> in addition to reporting all suspicious orders, a distributor has a statutory responsibility [found in 21 U.S.C. § 823] to exercise due diligence to avoid filling suspicious orders that might be diverted into other than legitimate . . . channels.

DEA, *In re Masters Pharmaceuticals, Inc.*, Decision and Order, 80 Fed. Reg. 55,418, 55,421 (Sept. 15, 2015) (quoting Sept. 27, 2006 DEA Letter to Distributors, at 2).  A second letter to distributors on December 27, 2007 similarly states that "[r]eporting an order as suspicious will not absolve the registrant of responsibility if the registrant knew, or should have known, that the

---

[8] The two subsections following § 15-2-4.2.1 similarly refer to "[p]hysical security controls" and "security procedures to guard against in-transit losses."  *See* W. Va. C.S.R. §§ 15-2-4.2.2, -4.2.3.

controlled substances were being diverted," according to the DEA.  *See id.* (quoting Dec. 27, 2007 DEA Letter to Distributors).  Plaintiffs' allegation that McKesson "knew or should have known it was supplying pill-mill pharmacies" and similar allegations, *e.g.*, Am. Compl. ¶¶ 318-21, mirror the DEA's language in its 2007 letter.

Also in 2007, the DEA revoked the registration of a distributor to internet pharmacies, Southwood Pharmaceuticals, Inc., based on the DEA's interpretation of the federal CSA that distributors should refuse to fill certain suspicious orders.  DEA, *In re Southwood Pharmaceuticals, Inc.*, Revocation of Registration, 72 Fed. Reg. 36,487, 36, 499 (July 3, 2007) (finding that after distributor had information that its "Florida-based internet pharmacy customers were likely engaged in illegal activity," it "continued to distribute extraordinarily large quantities of hydrocodone to these pharmacies").  More recently in 2015, the DEA applied its interpretation of the federal CSA to revoke the registration of distributor Masters Pharmaceutical, Inc.  *See In re Masters Pharmaceuticals, Inc.*, 80 Fed. Reg. at 55,500-55,501 (finding that distributor filled orders identified as suspicious "without obtaining an explanation from the pharmacy").  Masters has appealed the DEA's decision to the U.S. Court of Appeals for the District of Columbia Circuit in *Masters Pharmaceutical, Inc. v. U.S. DEA*, No. 15-1335.

McKesson and other distributors disagree that the DEA may impose such a requirement without stating the requirement in a properly promulgated regulation.  Nonetheless, if a requirement to refuse to fill suspicious orders of controlled substances exists at all, it exists in the DEA's interpretation of the federal CSA as stated in its 2006 and 2007 letters and in registration revocation decisions.  The DEA's interpretation of the federal CSA is the only source of the requirement to refuse or suspend suspicious orders that Plaintiffs seek to impose on McKesson in their Amended Complaint.

# III.  ANALYSIS

**A.      Three counts of Plaintiffs' Amended Complaint facially arise under federal law.**

The original jurisdiction of the district courts includes jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331. "Whether a case 'arises under' federal law for purposes of § 1331" is governed by the "well-pleaded complaint rule."  *Holmes Grp., Inc. v. Vornado Air Circulation Sys.*, 535 U.S. 826, 830, (2002), *superseded on other grounds by statute* 28 U.S.C. § 1454.  Federal jurisdiction exists when a federal question is presented "on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see Lontz v. Tharp*, 413 F.3d 435, 439 (4th Cir. 2005) (removal "is appropriate if the face of the complaint raises a federal question") (citations omitted).  That is the case here.

In Counts III, IV, and V, Plaintiffs specifically allege that McKesson violated "United States laws and regulations," which they claim entitles them to damages and an injunction.  (Am. Compl. ¶¶ 373-75, 382, 390, 395, 403, *see also id.*, Prayer ¶¶ 2-3.[9])  Plaintiffs are indeed the master of their complaint, and they "may avoid federal jurisdiction by *exclusive* reliance on state law."  *Caterpillar*, 482 U.S. at 392 (emphasis added).  Plaintiffs, however, did not do so.  Federal law is presented "on the face of [Plaintiffs'] properly pleaded complaint."  *Id.*[10]

---

[9] Accordingly, Plaintiffs are incorrect to assert in support of their Motion to Remand that their Amended Complaint "lack[s] any alleged federal violations."  (Plfs.' Mem. at 4.)

[10] After discussing the well-pleaded complaint rule, *Caterpillar* addresses the complete preemption corollary to that rule.  *Id.* at  393-99.  McKesson does not contend that federal law completely preempts Plaintiffs' claims.  Rather, Plaintiffs facially plead federal law violations, and all Plaintiffs' claims necessarily depend on federal law.  Accordingly, Plaintiffs' discussion of *Caterpillar* and complete preemption (Plfs.' Mem. at 6-7) is inapposite.  Similarly, *Connolly v. Union Pac. R. Co.*, 453 F. Supp.2d 1104 (E.D. Mo. 2006), which Plaintiffs discuss at 9 n.3 & 15-16, is inapposite.  The court in *Connolly* based its decision on a lack of complete preemption and provided no substantive analysis of whether plaintiff's claims presented a substantial federal question pursuant to *Grable*.  *See* 453 F. Supp.2d at 1109-11.

### 1.     Plaintiffs plead federal claims in Counts III, IV, and V.

In Counts III, IV, and V, Plaintiffs necessarily plead that they have a private cause of action under "United States laws and regulations," because their claimed damages and entitlement to an injunction depend on such allegations. *See Yourtee v. Hubbard*, 196 W. Va. 683, 688, 474 S.E.2d 613, 618 (1996) ("Whenever a violation of a statute is the centerpiece of a theory of liability, the question arises whether the statute creates an implied private cause of action.").

In Count III and in their Prayer, Plaintiffs seek temporary and permanent injunctions to enforce "United States laws and regulations."  No court could issue the requested injunctions without specifically concluding that McKesson violated federal law—*i.e.*, the federal CSA.  And any injunction necessarily would apply federal law when stating what McKesson must or must not do to comply with the injunction.  Whether Plaintiffs actually have the ability to enforce the federal CSA is beside the point for the purposes of federal jurisdiction.  Federal jurisdiction can rest on a pleaded claim that ultimately fails to state a claim on which relief can be granted.  Here, Plaintiffs specifically plead that they are entitled to enforce federal law.  Accordingly, Count III facially pleads a federal question.

In Counts IV and V, Plaintiffs plead that the mechanism for awarding them damages is W. Va. Code § 55-7-9.  (Am. Compl. ¶¶ 387, 400.)  That statute provides that "[a]ny person injured by the violation of any statute may recover from the offender such damages as he may sustain by reason of the violation."  W. Va. Code § 55-7-9.  That statute does not contain any substantive law that could be violated.  Instead, to obtain damages pursuant to W. Va. Code § 55-7-9, Plaintiffs must establish that another statute provides a private right of action.  *See Arbaugh v. Bd. of Educ.*, 214 W. Va. 677, 680-81, 591 S.E.2d 235, 238-39 (2003).  By pleading that they are entitled to damages pursuant to W. Va. Code § 55-7-9 for McKesson's alleged

10

violations of "United States laws and regulations," Plaintiffs necessarily plead that they have a private right of action arising under federal law.  Again, whether Plaintiffs actually have a private right of action under the federal CSA or other federal wholesale prescription drug distribution laws is beside the point.  Plaintiffs plead that they do.[11]  Accordingly, Counts IV and V facially plead a federal question.  *See Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (a "suit arises under the law that creates the cause of action") (internal quotation marks and citations omitted).

That Plaintiffs *also*, even primarily, plead violations of the WVCSA is not sufficient to avoid federal jurisdiction.  Plaintiffs' reliance on state law must be "exclusive" to do so.  *Caterpillar*, 482 U.S. at 392  When a plaintiff choses to plead violations of parallel state and federal laws, such as pleading violations of both state and federal consumer protection laws or state and federal antitrust laws, the complaint states a federal question that provides federal jurisdiction.  *See, e.g.*, *Cades v. H & R Block*, 43 F.3d 869, 873 (4th Cir. 1994) ("federal jurisdiction appeared on the face of [plaintiff's] amended complaint" that added National Bank Act and Truth in Lending Act claims to claims of violating "numerous provisions" of South Carolina consumer protection statutes); *In re Microsoft Corp. Antitrust Litig.*, 127 F. Supp.2d 702, 721-22 (D. Md. 2001) (finding federal jurisdiction appearing on the face of three removed complaints: (1) Louisiana complaint that alleged claims and relief available only under federal Sherman Act; (2) Ohio complaint that alleged "Microsoft's conduct violated both Ohio law and the Sherman Act;" and (3) Pennsylvania complaint that alleged only state-law causes of action

---

[11] In Counts IV and V, Plaintiffs also necessarily plead that they have a private right of action under "West Virginia laws and regulations."  In Plaintiffs' earlier actions against other distributors, which allege similar violations of only West Virginia laws and regulations and omit references to federal law violations, Plaintiffs have emphatically argued that they have a private right of action under the WVCSA that supports their claims for damages under W. Va. Code § 55-7-9.  Plaintiffs, then, cannot disavow that they now plead a private right of action under the federal CSA in Counts IV and V against McKesson.

but included in class allegations, "Microsoft violated Section One of the Sherman Act and Section Two of the Sherman Act"); *Shaffer v. HSBC Bank Nev.*, Civil Action No. 5:12-cv-968, 2013 WL 209483, at *4 (S.D. W. Va. Jan. 17, 2013) (finding subject matter jurisdiction in complaint alleging that defendant's conduct violated both WVCCPA and federal Telephone Consumer Protection Act).[12]  As in *In re Microsoft Antitrust Litigation*, "[t]here is no evident purpose" for Plaintiffs' allegations of federal law violations in Counts III, IV, and V "unless plaintiffs contemplate the assertion of [federal] claims."  127 F. Supp.2d at 722.

Plaintiffs now assert that by specific references to federal law, "the State is simply pointing out that the defendant, as required by state law, must also comply with all federal legal requirements regarding wholesale drug distribution."  (Plfs.' Mem. at 16 (quoting W. Va. Code § 60A-8-7(c)(1)(i), requiring distributors to be "in compliance with all federal legal requirements regarding wholesale drug distribution").)  Plaintiffs assert that "§ 60A-8-7(c)(1)(i) is the state law by which the defendant's conduct is measured."  (*Id.*)  This is wholly incorrect.  The West Virginia Wholesale Drug Distribution Act of 1991, §§ 60A-8-1, *et seq.*, refers to distributors complying with federal law, because it implements federal law—namely, the Prescription Drug Marketing Act of 1987, now the Federal Food, Drug, and Cosmetic Act, and its regulations.  *See* W. Va. Code § 60A-8-3; *see also id.* § 60A-8-7(c)(3) (FDA's wholesale drug distributor licensing guidelines control in case of conflict with state law).  The only manner in which McKesson's conduct can be measured under W. Va. Code § 60A-8-7(c)(1)(i) is by applying federal law.

---

[12] The Court then may exercise supplemental jurisdiction over the state-law claims that are so related that they "form part of the same case or controversy."  28 U.S.C. § 1367(a).

**2.      Plaintiffs' earlier complaints against distributors <u>did not</u> plead federal violations, confirming that Plaintiffs plead a federal question here.**

Plaintiffs assert that their claims against McKesson "are in fact the same as those at issue in the Court's analysis in the [claim in the AmerisourceBergen Drug Corporation and Cardinal Health cases], premised on the same West Virginia laws, and for all parts relevant to this matter, seek the same relief."  (Plfs.' Mem. at 3 (referring to the Court's decisions in *W. Va.* ex rel. *Morrisey v. AmerisourceBergen Drug Corp.*, Civil Action No. 2:12-3760, 2013 WL1305575, (March 27, 2013), and *W. Va.* ex rel. *Morrisey v. Cardinal Health, Inc.*, Civil Action No. 2:12-3836, 2013 WL1305647 (March 27, 2013)).[13])  Plaintiffs, however, ***did not*** plead federal law violations in those cases and ***did not*** seek injunctions enforcing federal law in those cases, as they do against McKesson.

For example, in the 74-paragraph AmerisourceBergen Complaint, Plaintiffs allege in Count II, asserting negligence and WVCSA violations, that distributors must "comply both with the laws of the State into which they distribute controlled substances and with industry customs and standards."  (AmerisourceBergen Compl. ¶ 25, attached as **Exhibit A**.)  Any reference to federal law is absent.  In stark contrast, Plaintiffs allege that McKesson negligently and intentionally "failed to conform its conduct . . . to United States law and regulations" (Am. Compl. ¶¶ 382, 395), and Plaintiffs add "United States laws and regulations" to their conjunctive

---

[13] Defendants in both cases had removed only on the basis of diversity jurisdiction under the Class Action Fairness Act ("CAFA"), asserting that the cases were effectively class actions or mass actions because the State's citizens were the real parties in interest.   Those distributor defendants never asserted federal question jurisdiction and this Court never addressed that issue.  The Court remanded those cases because it found CAFA diversity jurisdiction lacking.  Accordingly, Plaintiffs' citation of those remand decisions as supporting remand in this case is off base.  (*See* Plfs.' Mem. at 8 (stating that "[t]his case follows the same line of analysis this Court has repeatedly found not to have created a federal question" and first citing *AmerisourceBergen* and *Cardinal* decisions).)  Likewise, Plaintiffs' citation of those remand decisions in their Amended Complaint, ¶ 37, does not serve to disclaim Plaintiffs' reliance on federal law.

lists of laws and standards that McKesson allegedly violated and continues to violate (*id.* ¶¶ 373-75, 390, 403, & Prayer ¶¶ 2-3).

Also in their AmerisourceBergen Complaint, Plaintiffs included a count for violations of the West Virginia Antitrust Act. (*See* Ex. A, AmerisourceBergen Compl. ¶¶ 67-74.) That complaint, however, does not also allege violations of the parallel federal Sherman Antitrust Act. Had Plaintiffs also included claims under the Sherman Act, they would have stated a federal question on the face of that complaint. *See In re Microsoft Corp. Antitrust Litig.*, 127 F. Supp.2d at 722. By pleading only West Virginia Antitrust Act claims against other distributors, Plaintiffs have shown that they can rely on state law exclusively. Accordingly, Plaintiffs' current allegations of federal law violations, when Plaintiffs omitted similar allegations from earlier complaints, confirm that Plaintiffs facially plead a federal question in this case.[14]

**B.     All Plaintiffs' counts depend on a substantial question of federal law.**

Even when state law creates the causes of action, a complaint may raise a substantial question of federal law sufficient to warrant removal if "the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow*, 478 U.S. at 808-809; *see Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936) ("To bring a case within [§ 1441], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action."). "[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*,

---

[14] Because Plaintiffs now plead violations of federal law that they omitted from earlier complaints against distributors, Plaintiffs' assertion that "there is no 'objectively reasonable basis for seeking removal'" and their request for costs and fees are particularly unwarranted.

545 U.S. 308, 314 (2005); *see Gunn v. Minton*, --- U.S. ---, ---, 133 S. Ct. 1059, 1065 (2013) (reiterating *Grable*'s holding by stating that "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress").

Although Plaintiffs attempt to artfully plead only state-law claims in Counts I, II, VI, VII, and VIII, if Plaintiffs plead any legal violations at all in those counts, they are violations of federal law as interpreted by DEA.  In Counts I and II, Plaintiffs claim that shipping suspicious orders, allegedly in violation of the WVCSA, *ipso facto* violates the West Virginia Consumer Credit and Protection Act (the "WVCCPA").  In Count VI, Plaintiffs allege that McKesson's distribution of controlled substances in West Virginia has created a public nuisance.[15]  In Count VII, Plaintiffs allege that McKesson negligently distributed controlled substances in violation of a duty to guard against the misconduct of pharmacists and doctors.  And in Count VIII, Plaintiffs allege that McKesson was unjustly enriched by its profits from distribution of controlled substances in West Virginia.  In all these counts, the underlying alleged legal violation— allegedly shipping suspicious orders of controlled substances that should have been refused—is a violation of a requirement that may be found, if at all, only in federal law.  (*See supra* § II.D.) Because McKesson is a registered distributor that ships only to registered pharmacies, McKesson's controlled substance distribution is lawful absent this alleged federal law violation. Thus, the "federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4)

---

[15] Plaintiffs specifically allege that McKesson "persisted in a pattern and practice of *distributing* controlled substances of the kind where were well-known to be abused and diverted all while *distributing* the controlled substances in geographic areas, and in such quantities and with such frequency, that the Defendant knew or should have known that these substances were not being prescribed and consumed for legitimate medical purposes."  (Am. Compl. ¶ 415 (emphasis added).)

capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 133 S. Ct. at 1065.

### 1.     The Amended Complaint necessarily raises a federal issue.

"A plaintiff's right to relief for a given claim necessarily depends on a question of federal law only when *every* legal theory supporting the claim requires the resolution of a federal issue."[16] *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (emphasis in original). Here, the alleged wrong necessary for Plaintiffs to prove each of their claims is that McKesson "shipped these controlled substances to pharmacies and drug stores in sparsely populated areas" when McKesson knew or should have known that the orders in the aggregate were suspiciously large.  (Am. Compl. ¶ 321.[17])  For example, Plaintiffs allege in Count VI—Public Nuisance that McKesson distributed controlled substances that it knew or should have known were being diverted to illegitimate uses, which proximately caused a public nuisance.  (Am. Compl. ¶¶ 415-16.)  Without this allegation of unlawful distribution, Plaintiffs cannot state their public nuisance claim or any other claim.

McKesson, as a DEA and WVBOP registrant, may lawfully distribute controlled substances to registered pharmacies in West Virginia.  Plaintiffs have not alleged and cannot allege that McKesson failed to register with the DEA and the WVBOP or that McKesson

---

[16] This is the standard for a "given claim."  McKesson does not need to establish that every *count* of Plaintiffs' Amended Complaint necessarily depends on a substantial question of federal law.  So long as any of Plaintiffs' counts states a substantial federal question, federal question jurisdiction lies in this Court, and the Court may exercise supplemental jurisdiction over any related state-law counts.  *See* 28 U.S.C. § 1367(a).  In this case, however, all Plaintiffs' counts, however denominated, rely on the claim that McKesson unlawfully distributed controlled substances in West Virginia, and that overarching claim necessarily depends on federal law.

[17] This and similar allegations are incorporated by reference into each count.  Plaintiffs confirm in Count III that federal law is a necessary element of all their counts when they plead that the "claims for damages for past losses and future costs sustained by the Plaintiffs are insufficient to prevent future losses that will result from the failure of the Defendant to comply with West Virginia and **United States laws and regulations as detailed herein.**  (*Id.* ¶ 373 (emphasis added).)

shipped controlled substances to unregistered pharmacies.  The only potential source of Plaintiffs' claim that McKesson's distribution of controlled substances into West Virginia was unlawful is the federal CSA as interpreted by the DEA.  (*See supra* § II.D.)  Absent Plaintiffs' attempt to apply the DEA's interpretation that the federal CSA requires distributors "to exercise due diligence to avoid filling suspicious orders that might be diverted into other than legitimate channels," Plaintiffs have no claim that McKesson's distribution was unlawful.  The WVCSA and the WVBOP's Legislative Rules do not impose a similar duty and the WVBOP has not otherwise sought to impose a similar duty.  (*See id.*)  Accordingly, the Amended Complaint necessarily raises a federal issue.[18]

### 2. The federal issue is actually disputed in this case.

Here, the federal issue is actually disputed because it is the "central point of dispute." *Gunn*, 133 S. Ct. at 1065.  The resolution of all claims in Plaintiffs' Amended Complaint turns

---

[18] *Brown v. Endo Pharmaceuticals, Inc.*, 38 F. Supp.3d 1312 (S.D. Ala. 2014), discussed by Plaintiffs at 9-11 and 14, is not analogous to this case.  In that case, Endo asserted that the federal CSA provided its exclusive duties for the plaintiff's state-law negligence and wantonness claims relating to Endo's *manufacturing* crushable oxymorphone tablets.  38 F. Supp.3d at 1319.  The court concluded that Endo provided no support for the proposition that the CSA was the sole source of its duties to the plaintiff, and, even if Endo had, the federal question was not sufficiently substantial.  *Id.* at 1320.

*McGraw v. JPMorgan Chase & Co.*, 842 F. Supp.2d 984 (S.D. W. Va. 2012), which Plaintiffs discuss at 11-14, likewise is not applicable.  This Court found no federal jurisdiction first because the State's claims regarding payment protection charges were not "interest" alleged to be usurious and thus were not completely preempted.  842 F. Supp.2d at 988-94.  This Court then rejected the defendants' contention that removal was proper under CAFA.  *Id.* at 995-99.  Finally, this Court concluded that federal banking law was not sufficiently substantial, because the State's claims alleged specific violations of the WVCCPA that were not "a creature of federal law."  *Id.* at 999-1002 (citation omitted).

*McCallister v. Purdue Pharma L.P.*, 164 F. Supp.2d 783 (S.D. W. Va. 2001), which Plaintiffs discuss at 14-15, likewise is not applicable.  *McCallister* was decided before *Grable* and imposed the requirement that the jurisdictional-granting federal law provide plaintiffs with a private right of action.  164 F. Supp.2d 783 at 793-94.  *McCallister* also rejects "defensive preemption as a basis for federal removal jurisdiction."  *Id.* at 794.  McKesson, however, does not assert federal law as a defense.

on the disputed issue of whether McKesson shipped controlled substances in violation of a duty to refuse to ship suspicious orders—a duty found, if at all, exclusively in federal law.

### 3.    The federal issue is substantial.

> The doctrine [that federal courts will have jurisdiction over state-law claims that implicate significant federal issues] captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues.

*Grable*, 545 U.S. at 312 (citations omitted).  The substantiality inquiry looks to "the importance of the issue to the federal system as a whole," including the precedential effect of allowing state courts to decide cases involving federal issues.  *Gunn*, 133 S. Ct. at 1066-67.

A determination of whether McKesson meets obligations imposed by DEA under federal law raises a substantial federal question important to the federal system as a whole.  If Plaintiffs are to prevail on their claims, the Court must find that McKesson violated a duty solely imposed by the DEA interpreting the federal CSA.  Currently, the DEA's ability to so construe the federal CSA is before the D.C. Circuit in *Masters Pharmaceutical, Inc. v. U.S. DEA*, No. 15-1335.  As in *Grable*, the action of a federal agency and that agency action's compatibility with a federal statute is at issue in this case, which makes the federal issue "substantial."  545 U.S. at 314-15.  Furthermore, the substantiality of the unsettled federal question in this case contrasts with the federal patent issue in *Gunn*, which was at issue only in the context of a hypothetical trial-within-a-trial of a legal malpractice claim.  *See Gunn*, 133 S. Ct. at 1066-67.

This is not a case in which parallel state law provides similar or greater protections for its residents than federal law.  In this case, no West Virginia law requires that McKesson refuse to

18

ship suspicious orders of controlled substances.  This state-law vacuum is filled by federal law.[19]

Litigating this case in a state court runs the risk of the state court applying purely federal

requirements inconsistently with the manner in which the federal agency, the DEA, applies

them.[20]  In particular, the injunction that Plaintiffs request in Count III would give Plaintiffs the

authority to determine whether McKesson has complied with federal law.  Neither a state court

nor Plaintiffs should be permitted to usurp the DEA's authority in this area.  This risk to a

uniform and consistent federal system of controlled substances regulation supports the

substantial nature of the federal question presented in Plaintiffs' claims.[21]

### 4.     Resolving the federal issue in federal court would not disrupt the federal-state balance.

Having this case heard in federal court would not disrupt the federal-state balance.

Federal courts exclusively hear the few challenges to DEA authority to enforce the federal CSA

---

[19] The West Virginia Board of Pharmacy has adopted federal controlled substances law.  *See* W. Va. C.S.R. § 15-2-2.  This adoption of federal law supports that Plaintiffs' claims present a substantial federal question.  *See In re Pharm. Indus. Average Wholesale Price Litig.* (*Fla.*), 457 F. Supp.2d 65, 74 (D. Mass. 2006) (remanding action because, *inter alia*, defendants failed to show that Florida law incorporated federal definition of "average wholesale price;" finding that lack of evidence that Florida adopted federal definition meant that same phrase in state law could be defined without presenting federal question).

[20] The WVAG recently recognized that the fight against unlawful use of opioid painkillers requires federal involvement when he joined with U.S. Attorney William Ihlenfeld to prosecute drug trafficking across northern West Virginia.  (Press Release, "Combating Drug Abuse on Multiple Fronts," (Dec. 31, 2015), available at <http://www.ago.wv.gov/pressroom/2015/Pages/Combating-Drug-Abuse-on-Multiple-Fronts.aspx > (last visited April 5, 2016).)  The WVAG stated that "[w]hile our office is aggressively fighting the state's drug problem, the Attorney General's Office cannot address this issue alone. **Quite frankly, we lack some of the legal authority to do everything that is needed.**"  (*Id.* (emphasis added).)

[21] *Cf. Harper v. Massey Coal Servs.*, Civil Action No. 2:10–0894, 2011 WL 322558, at *6 (S.D. W. Va. Feb. 2, 2011) ("there is a substantial federal interest in ensuring that the scope of the FLSA's coverage is given uniform interpretation by federal courts"); *West Virginia* ex rel. *McGraw v. Eli Lilly & Co.*, 476 F. Supp.2d 230, 233-34 (E.D.N.Y. 2007) (concluding that WVAG's state-law claims stated substantial federal question because claimed damages arose from State's coverage of Zyprexa that was mandated by federal Medicaid law); *In re Pharmaceutical Industry Average Wholesale Price Litigation* (*Ariz.*), 457 F.Supp.2d 77, 80 (D. Mass. 2006) (concluding that "the meaning of A[verage] W[holesale] P[rice] in the federal Medicare statute is a substantial federal issue that properly belongs in federal court"); *Williams*, 2015 WL 4256249, at *3 (retaining jurisdiction because "[r]emand of this matter to state court would allow state courts to determine how the FDCA applies to the present facts and set national precedent").

against distributors.[22]   Thus, federal courts already are the exclusive forum for determining the permissible scope of restraints on distributors under the federal CSA, which is the precise question presented in Plaintiffs' Amended Complaint.   Moreover, no other state's attorney general has brought a similar lawsuit.   No floodgates to the federal courts would be opened.   *See Eli Lilly & Co.*, 476 F. Supp.2d at 234 ("The exercise of federal jurisdiction over the West Virginia Attorney General's action implicating the federal Medicaid laws will not attract a horde of original filings and removal cases raising other state claims with embedded federal issues.") (internal quotation marks and citation omitted).   Furthermore, Plaintiffs should enjoy no solicitude for their original choice of a state-court forum.   Regardless of the labels that Plaintiffs attach to their claims, the singular wrong that they allege against McKesson is shipping controlled substances that Plaintiffs allege should not have been shipped.   No West Virginia statutory or common law requires that McKesson refuse to ship controlled substances.

## IV.  CONCLUSION

Plaintiffs facially plead violations of federal law and seek an injunction to enforce federal law.   Plaintiffs thus plead federal question jurisdiction by avoiding exclusive reliance on state law for their claims.   Plaintiffs' Motion to Remand should be denied on this basis alone. Additionally, all Plaintiffs' claims necessarily depend on the substantial federal question of whether McKesson should have refused shipments of controlled substances pursuant to the Drug Enforcement Administration's interpretation of the federal Controlled Substances Act.   This provides an independent basis to deny Plaintiffs' Motion to Remand.

---

[22] *See, e.g.*, *PDK Laboratories Inc. v. U.S. Drug Enforcement Admin.*, 362 F.3d 786 (D.C. Cir. 2004) (challenge to DEA program enforcing CSA provisions to prevent diversion of ephedrine); *Administrative Subpoena Walgreen Co. v. U.S. Drug Enforcement Admin.*, 913 F. Supp.2d 243 (E.D. Va. 2012) (resolving registrant's motion to require DEA to return subpoenaed documents); *Cardinal Health, Inc. v. Holder*, 846 F.Supp.2d 203 (D.D.C. 2012) (challenge under Administrative Procedure Act, 5 U.S.C. §§ 551–706, to DEA order suspending registration of distribution facility).

**Respectfully submitted,**

**McKESSON CORPORATION**
**By Counsel:**

/s/Russell D. Jessee
Russell D. Jessee (W. Va. Bar No. 10020)
russell.jessee@steptoe-johnson.com
Devon J. Stewart (W. Va. Bar No. 11712)
devon.stewart@steptoe-johnson.com
**STEPTOE & JOHNSON PLLC**
P.O. Box 1588
Charleston, WV 25326-1588
Telephone: (304) 353-8000;
Facsimile: (304) 353-8180

And

Geoffrey Hobart (*Pro hac vice* application to be filed)
ghobart@cov.com
Matthew Benov (*Pro hac vice* application to be filed)
mbenov@cov.com
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone: (202) 662-6000

*Counsel to McKesson Corporation*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

STATE OF WEST VIRGINIA, *ex rel.*,
PATRICK MORRISEY, Attorney General, *et al.*,

        Plaintiffs,

v.                                Civil Action No. 2:16-cv-01772

McKESSON CORPORATION,

        Defendant.

## CERTIFICATE OF SERVICE

       I hereby certify that on the 7th day of April, 2016 I electronically filed the foregoing Defendant's Response in Opposition to "Plaintiffs' Motion to Remand and for Costs and Fees" via the CM/ECF system, which will provide notification and a copy of the filing to the following counsel of record:

| | |
|---|---|
| Vaughn T. Sizemore (#8231) | L. Lee Javins (#6613) |
| Deputy Attorney General | Special Assistant Attorney General |
| Office of the Attorney General | Bailey, Javins & Carter, LC |
| State Capitol Building 1, Room E-26 | 213 Hale Street |
| Charleston, WV 25305 | Charleston, WV 25301 |
| vaughn.t.sizemore@wvago.gov | LJavins@bjc4u.com |

There are no unrepresented parties.

                     /s/ Russell D. Jessee
                     Russell D. Jessee (W. Va. Bar No. 10020)
                     russell.jessee@steptoe-johnson.com
                     **STEPTOE & JOHNSON PLLC**
                     Chase Tower, 17th Floor
                     P.O. Box 1588
                     Charleston, WV 25326-1588
                     Telephone: (304) 353-8000
                     Facsimile:  (304) 353-8180

                     *Counsel to McKesson Corporation*

22