UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

THE STATE OF WEST VIRGINIA ex rel.
PATRICK MORRISEY, Attorney General,
JOSEPH THORNTON, in his capacity as
the Secretary of the West Virginia
Department of Military Affairs and
Public Safety, and
KAREN BOWLING, in her capacity as
the Secretary of the West Virginia
Department of Health and Human
Resources,

       Plaintiffs,

v.                                Civil Action No. 16-1772

MCKESSON CORPORATION,
a Delaware corporation doing
business in West Virginia,

       Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

      Pending is plaintiffs' motion to remand, filed on March 3, 2016 (ECF No. 8).

I.   <u>Facts and Procedural Background</u>

      Plaintiffs State of West Virginia ex rel. Patrick Morrisey, Attorney General, Joseph Thornton, Secretary, and Karen Bowling, Secretary, allege that defendant McKesson Corporation, a national pharmaceutical drugs distributor, did not take sufficient steps to monitor, report, and remedy

purportedly suspicious shipments of pharmaceuticals into West Virginia.  Plaintiffs brought this case against defendant in the Circuit Court of Boone County, West Virginia, on January 8, 2016.  Defendant removed on February 23, 2016, alleging federal question jurisdiction.

Plaintiffs' amended complaint ("complaint") alleges that defendant has caused substantial damage to the state of West Virginia and to various state agencies.  For example, it alleges that

> [t]he actions of the Defendant have caused and will continue to cause the West Virginia [Department of Health and Human Resources ("DHHR")] to expend substantial sums of State money to deal with the effects of epidemic of prescription drug addiction that was substantially fueled by the Defendant's illegal, reckless, and malicious action in flooding the state with highly addictive prescription medications without regard for the consequences to West Virginia DHHR.

Am. Compl. ¶ 26 (hereinafter "Compl.").  Likewise, it alleges that

> [t]he actions of the Defendant has caused, and will continue to cause the West Virginia [Department of Military Affairs and Public Safety] to expend substantial sums of State money to deal with the effects of epidemic of prescription drug addiction that was substantially fueled caused [sic] by the Defendant's illegal, reckless, and malicious action in flooding the state with highly addictive prescription medications without regard for the consequences to the Plaintiffs.

Compl. ¶ 33.  The Prayer for Relief requests that the court certify "a jury trial on all issues so triable to determine costs, losses, and damages as a result of the Defendant's actions outlined in this Complaint."  Compl. p. 58 (WHEREFORE clause).  In addition, it requests both temporary and permanent injunctions

> preventing Defendant from continuing to violate West Virginia laws and regulations and United States laws and regulations relating to the distribution of controlled substances in the State and mandate Defendant to promptly notify the West Virginia Board of Pharmacy, Office of the Attorney General, and the WV Department of Military Affairs and Public Safety of any and all suspicious orders for controlled substances as received from parties who are located in West Virginia and to submit their system for determining suspicious order [sic] to those West Virginia authorities for prior approval, and to enjoin Defendant from distributing any controlled substance in West Virginia for any non-legitimate medical purpose.

Id. p. 58-59 (WHEREFORE clause).

The complaint alleges that defendant McKesson Corporation failed to implement systems and procedures to report and prevent massive diversion of prescription drugs to illegal purposes in West Virginia.  See, e.g., Compl. ¶¶ 347, 353, 366. Plaintiffs allege that McKesson is liable on eight counts: violation of the West Virginia Consumer Credit and Protection Act (Count I); unfair methods of competition and/or unfair or deceptive acts or practices (Count II); violations of the West

3

Virginia Uniform Controlled Substances Act ("WVCSA") requiring injunctive relief (Count III); negligent violation of the WVCSA (Count IV); intentional violation of the WVCSA (Count V); public nuisance (Count VI); negligence (Count VII); and unjust enrichment (Count VIII).

Counts III, IV, and V, relating to the WVCSA, also make reference to "United States laws and regulations."  Those three counts are the only ones that do so.  In Count III, plaintiffs state their entitlement to both a temporary and a permanent injunction "to prevent Defendant from continuing to violate West Virginia and United States laws and regulations." Id. ¶¶ 374-75.  In Count IV, plaintiffs allege that "[u]pon information and belief, Defendant continues to negligently violate West Virginia laws and regulations, United States laws and regulations, and Defendant's industry customs, standards and practices, which continue to proximately cause substantial damages to Plaintiffs."  Id. ¶ 390.  Count V reiterates this allegation, but alleges intentional violations.  Id. ¶ 403.  In addition, the Prayer for Relief requests temporary and permanent injunctions preventing "Defendant from continuing to violate West Virginia laws and regulations and United States laws and regulations relating to the distribution of controlled substances in the State."  Id. p. 58-59 (WHEREFORE clause).

4

In response to defendant's removal, plaintiffs filed the pending motion to remand.  Plaintiffs argue that the complaint does not allege any federal claims, and plaintiffs contend that the complaint disclaims federal law as the source of the State of West Virginia's cause of action.  The complaint does not explicitly disclaim federal law, but it does allege similarity between the claims at issue here and those at issue in cases previously remanded by this court to state court for lack of federal diversity jurisdiction.  Compl. ¶ 37.  It states the corollary that there is "no objectively reasonable basis for jurisdiction in any other court."  Id.

Plaintiffs also claim that, on its face, the complaint does not rely on federal law to generate a cause of action, despite the smattering of nonspecific references in three Counts to "United States laws and regulations."  See Compl. ¶¶ 374 (Count III), 390 (Count IV), 403 (Count V).  Plaintiffs explain these references as merely incorporating references to federal law that exist in pertinent West Virginia state licensure law. Pls.' Mem. in Supp. Mot. to Remand 2 (hereinafter "Pls.' Mot."). State law provides that one of the qualifications for licensure is that an applicant operate "in compliance with all federal legal requirements applicable to wholesale drug distribution." W. Va. Code § 60A-8-7(c)(1)(I).

The complaint does not reference particular federal laws, although it contains numerous specific references to state statutes and regulations.  For example, the complaint alleges that "Defendant was on notice that West Virginia law required it, _inter alia_, to provide effective controls and procedures to guard against diversion of controlled substances, pursuant to 15 C.S.R § 2-4.2[.]1 and 2-4.4 and the [WVCSA]."  Compl. ¶ 42. West Virginia rule 15-2-4.2.1 states as follows:

> All registrants[1] shall provide effective controls and procedures to guard against theft and diversion of controlled substances. In order to determine whether a registrant has provided effective controls against diversion, the [West Virginia] Board [of Pharmacy] shall evaluate the overall security system and needs of the applicant or registrant.

W. Va. C.S.R. 15-2-4.2.1.  Rule 15-2-4.4 further requires as follows:

> The registrant shall design and operate a system to disclose to the registrant suspicious orders of controlled substances. The registrant shall inform the Office of the Board of suspicious orders when discovered by the registrant. Suspicious orders include orders of unusual size, orders deviating

---

[1] The State Board of Pharmacy ("Board") regulations define a "registrant" as "a person who has obtained a controlled substance permit from the Board."  W. Va. C.S.R. 15-2-5.1.16. Furthermore, the WVCSA states that "every person who manufactures, distributes, or dispenses any controlled substance" is required to register annually with the Board. See, e.g., W. Va. Code § 60A-3-302(a).  As such, distributors are clearly included within the meaning of registrant.

6

substantially from a normal pattern, and orders of
unusual frequency.

W. Va. C.S.R. 15-2-4.4.

The complaint specifically alleges violations of West
Virginia laws and regulations in the three Counts identified by
defendant as referencing federal law.  Count III alleges, <u>inter
alia</u>, as follows:

363. Defendant is required to "provide effective
controls and procedures to guard against theft and
diversion of controlled substances." 15 C.S.R. § 2-
4.2.1

. . . .

365. Suspicious orders include any orders of
unusual size, orders deviating substantially from a
normal pattern, and orders of unusual frequency. 15
C.S.R. § 2-4.4.

366. Defendant failed to diligently identify and
report suspicious orders it received. Defendant
continued to fill suspicious orders.

367. Defendant either blindly ignored suspicious
orders or failed to develop a system sufficient to
adequately identify suspicious orders as they were
received.

Compl. ¶¶ 363-67.  Count IV alleges, <u>inter alia</u>, the following:

377. The Defendant contributed to the epidemic
prescription drug abuse problem in the State of West
Virginia through repeated negligent violations of
various provisions of the West Virginia Uniform
Controlled Substances Act, to wit:

. . . .

7

• **Defendant negligently engaged in prohibited acts, contrary to W.Va. Code §§ 60A-4-401 through 403[2];**

• **Defendant negligently abetted and continue [sic] to abet individuals in deceiving and attempting to deceive medical practitioners in order to obtain prescriptions in violation of W.Va. Code § 60A-4-401.**

• **The Defendant negligently failed to meet the requirements of W.Va. Code § 60A-8-1 et seq.[3]**

• **The Defendant negligently conspired to violate the WV Uniform Controlled Substances Act.**

Compl. ¶ 377.  Finally, Count V alleges, inter alia, the

following:

392. The Defendant intentionally contributed to the epidemic prescription drug abuse problem in the State of West Virginia through repeated intentional violations of various provisions of the West Virginia Uniform Controlled Substances Act and through reckless disregard to the safety and well-being to [sic] the citizens of West Virginia, to wit:

---

[2] Sections 60A-4-401 through 403 of the WVCSA describe prohibited acts under the law and penalties for those acts.  The statute makes it unlawful, for example, for any person "[w]ho is subject to article 3 to distribute or dispense a controlled substance in violation of section [60A-3-]308."  W. Va. Code § 60A-4-402(a)(1).  Section 60A-3-308 of the WVCSA governs distribution of controlled substances, which is prohibited except by prescription.  It provides, for example, that substances included in certain schedules of the law "shall not be distributed or dispensed other than for a medicinal purpose."  W. Va. Code § 60A-3-308(d)(1).

[3] Section 60A-8-1 et seq. refers to the West Virginia Wholesale Drug Distribution Licensing Act of 1991 ("WVDDLA").  The WVDDLA governs persons engaged in the "wholesale distribution of human prescription drugs within [West Virginia]."  W. Va. Code § 60A-8-2.

8

. . . .

• Defendant intentionally engaged in prohibited acts, contrary to W.Va. Code §§ 60A-4-401 through 403;

• Defendant intentionally abetted and continue [sic] to abet individuals in deceiving and attempting to deceive medical practitioners in order to obtain prescriptions in violation of W.Va. Code § 60A-4-401.

• Defendant intentionally failed to meet the requirements of W.Va. Code § 60A-8-1 et seq.

• Defendant intentionally conspired to violate the WV Uniform Controlled Substances Act.

Compl. ¶ 392.

Plaintiffs also contend that "[e]ven if this Court finds the State's Amended Complaint implicates federal law, it still does not rise to the level of a substantial federal question" under Grable & Sons Metal Products, Inc. v. Darue Engineering and Manufacturing, 545 U.S. 308 (2005), discussed further at page twelve, infra.  Pls.' Mot. 13.

Defendant responds that plaintiffs' complaint can be reduced in substance to a theory of the case in which defendant breached a single "duty to refuse to fill suspicious orders" of certain pharmaceutical drugs.  See, e.g., Def.'s Resp. to Pls.' Mot. to Remand 6 (hereinafter "Def.'s Resp.").  Defendant argues that the federal Controlled Substances Act ("federal CSA") alone can generate the duty that defendant is alleged to have

9

breached.  Def.'s Resp. 10 ("No court could issue the requested instructions without specifically concluding that McKesson violated federal law — i.e., the federal CSA.").  According to defendant, the duty to refuse to fill suspicious orders does not arise directly from the federal CSA; instead, it arises, if at all, in the federal CSA "as interpreted by [the Drug Enforcement Agency ("DEA")]" in two letters, written in 2006 and 2007, from the DEA to all registered distributors.  Id. 7, 15.[4]

The 2006 DEA letter stated that "in addition to reporting suspicious orders, a distributor has a statutory responsibility to exercise due diligence to avoid filling suspicious orders that might be diverted into other than legitimate . . . channels."  Masters Pharmaceuticals, Inc., Decision and Order, 80 Fed. Reg. 55,418, 55,421.  The 2007 letter warned distributors that "[r]eporting an order as suspicious will not absolve the registrant of responsibility if the registrant knew, or should have known, that the controlled substances were being diverted."  Masters Pharmaceuticals, 80 Fed. Reg. at 55,421.  Defendant argues that the two letters

---

[4] Defendant notes with respect to the federal CSA that it "does not contend that federal law completely preempts plaintiffs' claims" and accordingly, defendant does not address that proposition but merely notes that plaintiffs' "discussion of . . . . complete preemption . . . is inapposite."  Def.'s Resp. 9 n.10.

together generate a single duty to "refuse to fill suspicious orders" that forms the basis of all of plaintiffs' claims.  <u>See, e.g.</u>, Def.'s Resp. 6.[5]  Defendant also contends that removal is improper only if plaintiffs rely exclusively on state law claims, which defendant says they allegedly do not.  Rather, defendant asserts that federal claims are present on the face of the complaint in Counts III, IV, and V in the references to "United States laws and regulations," and that all of plaintiffs' claims depend on a substantial federal question.

## II.  <u>Analysis</u>

### A.  Removal Standards

The issue before the court is whether plaintiffs' complaint states a claim sufficiently federal in nature to justify the exercise of federal question removal jurisdiction by this court.  Federal courts are not courts of general jurisdiction: they "possess only that power authorized by Constitution and statute."  <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994); 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil

---

[5] Defendant characterizes this duty equivocally at various points as a duty to refuse to fill suspicious orders, a duty to refuse to ship such orders, and a duty to refuse such orders.  <u>See, e.g.</u>, Def.'s Resp. 1-2.  For simplicity's sake, however, the court will use the defendant's most consistent statement of the duty - a duty to refuse to fill suspicious orders.  <u>See id.</u> 6.

actions arising under the Constitution, laws, or treaties of the United States."). Jurisdiction is "determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration." Taylor v. Anderson, 234 U.S. 74, 75 (1914). The most obvious manner of establishing jurisdiction is by pleading a federal cause of action. See, e.g., Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 690 (2006). Additionally, the "plaintiff is the 'master of the claim.'" Pinney v. Nokia, Inc., 402 F.3d 430, 442 (4th Cir. 2005) (quoting Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987)).

In the event a case is not properly removed to federal court, the court must remand the case to state court. 28 U.S.C. § 1447 ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). For the purpose of removal jurisdiction, defendant bears the burden of "demonstrating the court's jurisdiction over the matter." Strawn v. AT & T Mobility LLC, 530 F.3d 293, 296 (4th Cir. 2008). The Supreme Court has stated that "considerations of comity make us reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it." Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal., 463 U.S. 1, 21

n.22 (1983).  Indeed, a state court is often "competent to apply federal law, to the extent it is relevant." <u>Empire Healthchoice</u>, 547 U.S. at 701.  Courts disfavor removal jurisdiction particularly when a case involves substantial questions of state law.  <u>See</u> <u>Bender v. Jordan</u>, 623 F.3d 1128, 1130 (D.C. Cir. 2010) ("[F]ederal jurisdiction is disfavored for cases that are 'fact-bound and situation-specific' or which involve substantial questions of state as well as federal law."); <u>Lontz v. Tharp</u>, 413 F.3d 435, 440 (4th Cir. 2005) ("[S]tate law complaints usually must stay in state court when they assert what appear to be state law claims.").

Federal jurisdiction may arise under the "well-pleaded complaint rule" even when the complaint does not explicitly plead a federal cause of action.  A suit arises under this rule "if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." <u>Franchise Tax</u>, 463 U.S. at 13.  The leading case in such a situation is <u>Grable</u>.  545 U.S. 308 (2005) (finding removal jurisdiction where plaintiff brought an action in state court to quiet title on deed for property that had been confiscated by IRS under federal tax law, concerning which

plaintiff alleged IRS had failed to notify him in accordance
with federal law).  Id. at 310-11.

Where a complaint implicates federal law, "the
question is, does a state-law claim necessarily raise a stated
federal issue, actually disputed and substantial, which a
federal forum may entertain without disturbing any
congressionally approved balance of federal and state judicial
responsibilities."  Id. at 314.  "That is, federal jurisdiction
over a state law claim will lie if a federal issue is: (1)
necessarily raised, (2) actually disputed, (3) substantial, and
(4) capable of resolution in federal court without disrupting
the federal-state balance approved by Congress."  Gunn v.
Minton, 133 S. Ct. 1059, 1065 (2013).  Grable jurisdiction,
however, exemplifies a "slim category" of cases.  Empire
Healthchoice, 547 U.S. at 701; W. Va. ex rel. McGraw v. Rite Aid
of W. Va., Inc., No. CIV.A. 2:09-0956, 2010 WL 454488, at *2
(S.D.W. Va. Feb. 1, 2010) ("'Obviously, not every state-law
claim raising a federal issue can invoke federal question
jurisdiction. Indeed, such cases will be exceptional.'" (quoting
Wright & Miller, Fed. Prac. and Proc. § 3562 (3d ed. 1998))).
Alleging there is a "federal issue" is not a "password opening
federal courts to any state action embracing a point of federal
law."  Grable, 545 U.S. at 314.  Furthermore, "any doubts

14

concerning the propriety of removal should be resolved <u>against</u>
removal." <u>Barbour v. Int'l Union</u>, 640 F.3d 599, 617 (4th Cir.
2011) (emphasis original).

### B.  Plaintiffs' Facial Claims

Plaintiffs seek remand first by noting that the
complaint disavows any dependence upon federal law.  Indeed, the
complaint does disavow any relief for federal monies expended
under federal programs such as Medicaid, Compl. ¶ 36; and it
identifies prior cases of this court that were remanded under
similar factual scenarios, and it also specifies West Virginia
courts as the only courts properly having jurisdiction, <u>id.</u> ¶
37.

Defendant, however, is correct that the complaint does
reference federal laws and regulations generally on occasion.
The 61-page pleading references "United States laws and
regulations" a total of nine times, including in the Prayer for
Relief and Counts III (injunctive relief under WVCSA), IV
(negligence under WVCSA), and V (intentional acts under WVCSA).
The Prayer requests temporary and permanent injunctions
preventing "Defendant from continuing to violate West Virginia
laws and regulations and United States laws and regulations
relating to the distribution of controlled substances in the
State."  <u>Id.</u> p. 58-59 (WHEREFORE clause).  In Count III,

plaintiffs state their entitlement to both a temporary and a permanent injunction "to prevent Defendant from continuing to violate West Virginia and United States laws and regulations." Id. ¶¶ 374-75.  In Count IV, plaintiffs allege that "[u]pon information and belief, Defendant continues to negligently violate West Virginia laws and regulations, United States laws and regulations, and Defendant's industry customs, standards and practices, which continue to proximately cause substantial damages to Plaintiffs."  Id. ¶ 390.  Count V reiterates this allegation with respect to intentional violations.  Id. ¶ 403. Aside from these scattered references, however, plaintiffs' complaint does not appeal to recourse under federal law.  It neither alleges a federal cause of action nor refers to specific federal statutes or regulations, although it does make many specific references to West Virginia laws and regulations.  See, e.g., id. ¶¶ 377, 392.

Though defendant asserts that the statements in Counts III, IV, and V amount to "specifically pleading federal law violations," Def.'s Resp. 6, that is patently not the case.  In fact, when juxtaposed with the specific references to West Virginia laws alleged in those same Counts, the generic references to "United States laws and regulations" emerge as nothing more than ambiguous catch-alls.  Importantly, these

16

catch-alls are presented by defendant as magic words on the face
of the complaint that open the door to the federal courts.  See,
e.g., Def.'s Resp. 10-11.  This argument closely resembles the
"password" approach to removal jurisdiction expressly
disapproved by Grable.  545 U.S. at 314.

     Plaintiffs explain these federal catch-alls in the
complaint as references intended, in effect, to mirror the
interdependent nature of West Virginia and federal licensure law
in this area.  Plaintiffs argue that the complaint's federal law
references merely point out that "the defendant, as required by
state law, must also comply with all federal legal requirements
regarding wholesale drug distribution."  Pls.' Mot. 16.  West
Virginia does, in general fashion, on occasion incorporate
references to federal law into its state licensure statute.  For
example, as plaintiffs note, West Virginia Code § 60A-8-7 states
as one of the minimum qualifications of licensure that an
applicant maintain "operations in compliance with all federal
legal requirements applicable to wholesale drug distribution."
W. Va. Code § 60A-8-7(c)(1)(I).  Plaintiffs do not allege,
however, that such federal law provides either a cause of action
or a basis for a legal duty violated here, and as such it cannot
be a basis for federal jurisdiction.

## C.  Federal Issue Analysis under <u>Grable</u>

With respect to whether the complaint raises a federal issue, even if it does not state a federal claim on its face, defendant argues that all of plaintiffs' claims necessarily reduce to an allegation of the violation of a substantial federal duty – the duty to refuse to fill suspicious orders. Defendant contends that "in addition to specifically pleading federal law violations in Counts III, IV, and V, all Plaintiffs' claims necessarily depend on McKesson's alleged violation of a duty that may be found, if at all, only in federal law."  Def.'s Resp. 6.  This duty is, according to defendant, McKesson's "duty to refuse to fill suspicious orders."  <u>Id.</u>

Defendant does not find the source of this duty in the federal CSA statute itself, but in the DEA letters' interpretation of the federal CSA.  Defendant contends that "if a requirement to refuse to fill suspicious orders of controlled substances exists at all," it exists in the two letters from the DEA to distributors, dated September 27, 2006 and December 27, 2007, that interpreted the CSA.  The 2006 DEA letter stated that "in addition to reporting suspicious orders, a distributor has a statutory responsibility to exercise due diligence to avoid filling suspicious orders that might be diverted into other than legitimate . . . channels."  <u>Masters Pharmaceuticals</u>, 80 Fed.

18

Reg. at 55,421. The 2007 letter warned distributors that "[r]eporting an order as suspicious will not absolve the registrant of responsibility if the registrant knew, or should have known, that the controlled substances were being diverted." Masters Pharmaceuticals, 80 Fed. Reg. at 55,421.

Under Grable's test, a properly removed claim must "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable, 545 U.S. at 314. See also Gunn, 133 S. Ct. at 1065 (noting that under Grable "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress").

Plaintiffs dispute that their allegations fulfill the first prong of Grable of necessarily depending on the single duty identified by defendant – to avoid filling suspicious orders. First, they correctly note that the federal CSA statute imposes no explicit duty to refuse orders – the only duty defendant claims to be at issue - on distributors. See 21 U.S.C. § 823 (requiring only that distributors "maint[ain]

effective control against diversion of particular controlled substances"). Likewise, they correctly observe that defendant undermines its own argument by calling into question the existence of the duty in which it finds the only source of federal question jurisdiction. <u>See</u> Def.'s Resp. 8 ("if a requirement to refuse to fill suspicious orders . . . exists at all").

Second, plaintiffs contend that the allegations in their complaint depend, <u>inter alia</u>, on state-law duties imposed on the defendant to design and operate a system to detect, monitor, identify, and report suspicious orders, not only a duty to refuse to fill such orders. <u>See, e.g.</u>, Compl. ¶ 24 (alleging that "West Virginia DHHR has been damaged by the Defendant's negligent actions in failing to investigate, report, and cease fulfilling suspicious orders to pharmacies and drug stores in the State of West Virginia"), ¶ 346 (alleging defendant failed to implement a "precise system of detecting and monitoring the supply of prescription medicine"), ¶ 406 (alleging "failure to adequately design and operate a system to disclose suspicious orders of controlled substances, and [] failure to inform the State of suspicious orders when discovered by the registrant"). The complaint cites on numerous occasions to West Virginia regulations, which require, for example, that "[t]he registrant

shall design and operate a system to disclose to the registrant suspicious orders of controlled substances."  W. Va. C.S.R. 15-2-4.4.  In Count III, plaintiffs allege that defendant "failed to diligently identify and report suspicious orders it received," Compl. ¶ 366, and "failed to develop a system sufficient to adequately identify suspicious orders," id. ¶ 367. Counts IV and V allege violations of West Virginia statutory provisions, including violations of West Virginia Code § 60A-3-308, 60A-4-401 through 403, and 60A-8-1, et seq.[6], that cannot be reduced simply to a duty to avoid filling orders.  See, e.g., id. ¶¶ 377, 392.

Third, plaintiffs' allegations do not "necessarily" involve a "stated federal issue."  Grable, 545 U.S. at 314.  The pleadings certainly do not "state" a federal issue.  Even taking

---

[6] Of these references to West Virginia law, defendant appears to address only the reference to Section 60A-8-1, et seq., which involves the WVDDLA.  Def.'s Resp. 12.  Defendant argues that Section 60A-8-1, et seq., does not allege a state claim because it "implements federal law – namely, the Prescription Drug Marketing Act of 1987, now the Federal Food, Drug, and Cosmetic Act, and its regulations."  Id. (citing W. Va. Code § 60A-8-3).  However, while the WVDDLA's prefatory remarks in Section 60A-8-3 do proffer that the state law's purpose is to implement federal law, the WVDDLA nevertheless provides its own statutory requirements and standards, and therefore cannot be characterized as necessarily requiring analysis of federal issues.  Furthermore, state courts are "competent to apply federal law, to the extent it is relevant."  Empire Healthchoice, 547 U.S. at 701.  Accordingly, this state law does not necessarily raise a substantial federal issue.

the formulation from <u>Gunn</u> that omits the requirement that an issue be stated, 133 S. Ct. at 1065, it is not "necessary" here to resolve a putative federal issue.  Even if the only duty at issue were that stipulated by defendant, there is no reason to think its only source lies in two letters from the DEA.  The complaint nowhere mentions such letters, or any federal agency guidance, and defendant itself calls into question the very existence of a federal duty.

Furthermore, plaintiffs' complaint alleges violations of numerous duties implicated by state law.  For example, the West Virginia State Board of Pharmacy's rules require that "[a]ll registrants shall provide effective controls and procedures to guard against theft and diversion of controlled substances."  W. Va. C.S.R. 15-2-4.2.1.  The same rules require that a "registrant shall design and operate a system to disclose to the registrant suspicious orders of controlled substances. The registrant shall inform the Office of the Board of suspicious orders when discovered by the registrant."  W. Va. C.S.R. 15-2-4.4.  As noted above, plaintiffs allege violations of numerous duties implicated by these regulations, including duties to "investigate, report, and cease fulfilling suspicious orders," Compl. ¶ 24, to implement a "precise system of detecting and monitoring the supply of prescription medicine,"

22

Compl. ¶ 346, "to adequately design and operate a system to disclose suspicious orders of controlled substances," Compl. ¶ 406, and "to inform the State of suspicious orders," id.

Finally, this case is disanalogous to Grable. Grable upheld removal jurisdiction in a quiet title action because the plaintiff had alleged that the Internal Revenue Service failed properly to notify the plaintiff of the seizure of its property in accordance with a notice provision of the Internal Revenue Code. 545 U.S. at 310. The plaintiff specifically alleged a federal notice statute as "an essential element of its [state law] quiet title claim." Id. at 315. Here, by contrast, plaintiffs have not alleged violations of any specific federal laws or regulations, and no federal statute or regulation has emerged as an "essential element" of the underlying claim. Rather, plaintiffs have alleged numerous and substantial issues of state law in both their complaint and their motion. See, e.g., Compl. ¶¶ 377, 392; Pls.' Mot. 2.

Consequently, it does not appear to the court that the only possible source of a putative duty to avoid filling suspicious orders lies in letters relied upon only by defendant, or that plaintiffs' claims necessarily rely on this duty. For one thing, there are no good reasons to believe that the letters have any binding effect upon distributors. Plaintiffs contend

23

that "the DEA letter[s] do[] not create a binding effect upon
distributors such as the defendant, and [are] to be construed as
[] mere warning letter[s]."  Pls.' Reply 7 (quotation marks
omitted).  Defendant concedes that the letters were not binding,
but in apparent contradiction, insists that the letters generate
an "obligation" that must be "heed[ed]."  Def.'s Surreply to
Pls.' Reply in Supp. of Mot. to Remand 2.  To the extent that
the letters prove relevant, their guidance may of course be
marshalled in support of particular allegations.  The agency
itself, however, has found that the letters were "not intended
to have binding effect but were simply warning letters."
Masters Pharmaceuticals, 80 Fed. Reg. at 55,475.  Of course,
plaintiffs, not defendant, are "master[s] of the claim."
Caterpillar, 482 U.S. at 392.

        Defendant cannot stipulate a single duty to refuse to
fill suspicious orders, about which defendant is itself
ambivalent, generated merely by DEA letters in order to
bootstrap into federal court a complaint that alleges numerous
specific state-law causes of action.  "[F]ederal jurisdiction is
disfavored for cases . . . which involve substantial questions
of state as well as federal law."  Bender, 623 F.3d at 1130.
Plaintiffs have alleged violations of numerous West Virginia
statutes and regulations, and the use of the catch-all "United

States laws and regulations" does not operate to unlock the federal courts to the claims at issue here.  Even were there some indication from the complaint – which there is not – that federal agency letters provided some binding and relevant duty, "any doubts concerning the propriety of removal should be resolved against removal."  Barbour, 640 F.3d at 617.  Defendant bears the burden of quieting such doubts and has not done so here.  Strawn, 530 F.3d at 296.  Defendant has therefore not made out a case under Grable that all of plaintiffs' claims necessarily hinge on the duty to refuse to fill suspicious orders, and as a consequence, the exercise of removal jurisdiction is improper.

### D.   Closing

For the foregoing reasons, the court will remand this case to the Circuit Court of Boone County, West Virginia, for further proceedings.

### III.   Costs and Fees

Plaintiffs petition for costs and fees incurred in filing the instant motion.  See Pls.' Mot. 18 n.6.  "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  According to the Supreme

Court, the standard for awarding fees depends on reasonableness: "when an objectively reasonable basis [for removal] exists, fees should be denied." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). Although it is a close question, the court is of the opinion that there has been presented an objectively reasonable basis for removal in this case. The complaint does contain a smattering of references to federal law and regulations, and the possibility that such references might raise a substantial federal issue is not implausible, if remote. Consequently, the court will not award costs and fees under 28 U.S.C. § 1447(c).

## IV.  Conclusion

Accordingly, it is ORDERED that plaintiffs' motion to remand be, and it hereby is, granted, and plaintiffs' motion for costs and fees be, and it hereby is, denied.

The Clerk is directed to forward copies of this order to all counsel of record, any unrepresented parties, and to the Clerk of the Circuit Court of Boone County, West Virginia.

DATED:  January 24, 2017

John T. Copenhaver, Jr.
United States District Judge

26